IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| AMERICAN MULTI-CINEMA, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>WOODSONIA HWY 281, LLC, GREGORY C. SCAGLIONE, CITY OF GRAND ISLAND, NEBRASKA, and COMMUNITY REDEVELOPMENT AUTHORITY OF THE CITY OF GRAND ISLAND, NEBRASKA,<br><br>Defendants. | 8:25CV292<br><br>MEMORANDUM AND ORDER |

This matter is before the Court on Gregory Scaglione's Motion to Dismiss (Filing No. 19), the Grand Island Defendants'[1] Motion to Dismiss (Filing No. 25), and Woodsonia's Motion to Dismiss or Compel Arbitration (Filing No. 22).

Grand Island, Nebraska wants to redevelop a mostly vacant mall. AMC, a former tenant of the mall, is not satisfied with the methods its landlord—Woodsonia—used to transfer its leasehold interest to Grand Island. AMC believes this amounted to a taking under the Federal Constitution. AMC then sued Woodsonia, Grand Island, Grand Island's Redevelopment Authority, and an attorney who was involved in terminating its lease.

Much of AMC's takings claim turns on provisions in its lease agreement with Woodsonia. Specifically, the lease contains a provision that automatically terminates the lease interest if that interest is conveyed under threat of eminent domain proceedings. If this provision controls, it likely precludes AMC's takings claim. But the lease also contains a mandatory arbitration provision that leaves the question of arbitrability to the arbitrator.

---

[1] The City of Grand Island and The Community Redevelopment Authority of the City of Grand Island (The Redevelopment Authority).

1

Pursuant to this clause, the Court must compel arbitration between AMC and Woodsonia and stay proceedings between those two parties under 9 U.S.C. § 3. *Smith v. Spizzirri*, 601 U.S. 472, 478–79 (2024). The issues decided in arbitration may be outcome determinative for the other parties. Even if they are not, embarking on parallel litigation risks conflicting constructions of the same contract. The Court will stay the balance of this litigation while AMC and Woodsonia arbitrate their dispute and address the remaining issues with the benefit of their arbitral award.

## BACKGROUND

This is a takings case arising out of the redevelopment of a mall.

The Conestoga Mall is a defunct shopping center located in Grand Island, Nebraska. Filing No. 1 at 3, ¶ 11. AMC—a movie theater operator—was a long-term tenant in the mall. AMC's lease began in 2003 and ends in 2028.[2] *Id.* at 3–4, ¶¶ 12, 18. Woodsonia acquired the mall while AMC was a tenant and is currently redeveloping the property. *Id.* at 4, ¶ 20. During the relevant period, Woodsonia was AMC's landlord. *Id.*

AMC attached the lease to the complaint, and everyone agrees it is authentic, so the Court can consider its terms. *Miller v. Redwood Toxicology Lab'y, Inc.*, 688 F.3d 928 (8th Cir. 2012). Three are relevant here. The first two—§ 15.1 and § 15.5—address the parties' rights and obligations if a governmental authority exercises its eminent domain authority over the property. Here are those provisions:

---

[2] The lease was executed in 2003. Between 2003 and today, the mall property changed ownership and AMC renewed its lease. *See* Filing No. 1 at 4–5, ¶ 14–20 and cited exhibits. These events did not affect the relevant provisions.

2

> EMINENT DOMAIN
>
> 15.1    Taking. If the Demised Premises, or a substantial part thereof, shall be taken in eminent domain, or conveyed under threat of condemnation proceedings, then this Lease shall forthwith terminate and end upon the taking thereof as if the original term provided in said Lease expired at the time of such taking; provided that the Base Rent, Percentage Rent, if any, additional rent and any other charges hereunder shall be paid to Landlord by Tenant up to the date of such taking. If only such part or portion of the Demised Premises is taken which, in Landlord's *reasonable* opinion, would not substantially and materially interfere with or adversely affect the business of the Tenant conducted at the Demised Premises, then Landlord, at Landlord's
>
> option to be exercised in writing within thirty (30) days after the taking thereof, may repair, rebuild or restore the Demised Premises and this Lease shall continue in full force and effect. If, however, because of such taking the Demised Premises, in Landlord's *reasonable* opinion, should be rendered untenantable or partially untenantable, then the Base Rent, or a portion thereof, shall abate in proportion to the portion of the Demised Premises rendered untenantable until the Demised Premises shall have been restored.

Filing No. 1-1 at 20–21.

> 15.5    Transfer of Landlord's Interest to Condemnor. Landlord may, without any obligation or liability to Tenant, agree to sell and/or convey to the condemnor the Demised Premises, the Shopping Center or any portion thereof, sought by the condemnor, free from this Lease and the rights of Tenant hereunder, without first requiring that any action or proceeding be instituted or, if instituted, pursued to a judgment. In such event, this Lease shall be deemed terminated effective on the date of such transfer.

*Id.* at 21.  The third—§ 16.8—is an arbitration clause.  Here is that provision:

> 16.8  Arbitration. In the event of any disagreement, dispute or claim concerning this Lease or the obligations of Landlord and Tenant under this Lease (except as otherwise provided below), and if such matter cannot be resolved within ten (10) days after written demand by Tenant or Landlord to the other party that the matter in dispute be resolved through arbitration, either Landlord or Tenant shall be entitled to submit such matter to binding arbitration under the rules of the American Arbitration Association (the "AAA") then in effect. Any claim by Landlord for the eviction of Tenant or for possession of the Demised Premises shall not be subject to arbitration including, without limitation, the disputes, claims and defenses underlying such claim for eviction or possession, unless Landlord consents to such arbitration in its sole discretion. The matter shall be submitted to arbitration in Denver, Colorado and the parties shall immediately request that the AAA provide a list of qualified arbitrators. If any discovery or document production is allowed and agreed upon by the parties, such discovery shall be limited to items and information directly and materially related to the matters at issue, and limited so as to (i) minimize any burden on Landlord, and (ii) maintain the confidentiality of Landlord's books, records and documents. In the event the parties cannot agree on a single arbitrator within ten (10) days after the parties have received the list of arbitrators, each party shall designate one arbitrator from the list within ten (10) days thereafter and the selected arbitrators shall then select an additional arbitrator within ten (10) days after their selection to complete the panel of arbitrators. If the two arbitrators are unable to select an additional arbitrator, the AAA shall select the additional arbitrator. All arbitration proceedings shall then be conducted in an expedited manner and in accordance with the applicable rules of the AAA with all costs of the arbitration proceeding (including, without limitation, reasonable attorneys' fees, arbitrators' fees and witness fees) to be borne by the parties in accordance with this Lease, which shall be provided for in the arbitration award. The decision of the arbitrator(s) shall be final and binding upon the parties and shall not be subject to appeal in any court; provided, however, that notwithstanding anything herein to the contrary, the award shall be subject to vacation or modification as provided in the Uniform Arbitration Act or other similar act in effect in the state in which the arbitration occurs.

*Id.* at 24.

By 2022, the Conestoga Mall had seen better days. Three of the four anchor tenants left, the physical space deteriorated, and the value of the property dropped significantly. Filing No. 1-9 at 6. A 2022 study commissioned by the City Council found the mall and the surrounding area was "blighted" and "substandard." Filing No. 1-9 at 102, 164; *see* Neb. Rev. Stat. § 18-2101.02; *id.* § 18-2103(3) (defining a blighted area). The Redevelopment Authority[3] proposed redeveloping the area to better align land usage with the City's needs. *See generally* Filing No. 1-9 (the redevelopment proposal). The Grand Island City Council approved the redevelopment plan. Filing No. 1-10. The

---

[3] The Redevelopment Authority is a community redevelopment authority contemplated by the Community Development Law.  *See* Neb. Rev. Stat. § 18-2102.01. Nebraska's Community Development Law "authorizes a city to create by ordinance a" community development authority "for the purpose of defining and acquiring substandard or blighted areas and redeveloping them in accordance with the approved redevelopment plan, which in turn shall conform to the general plan for the municipality as a whole." *Fitzke v. City of Hastings*, 582 N.W.2d 301, 309 (Neb. 1998).

4

Redevelopment Authority contracted with Woodsonia to execute the redevelopment plan. Filing No. 1-14.

This redevelopment meant the tenants of the Conestoga Mall – including AMC – had to vacate the premises. Filing No. 1-15. Woodsonia bought out the other tenants. But it could not reach an agreement with AMC. Filing No. 1 at 6–10, ¶¶ 26–37. After negotiations broke down, the Redevelopment Authority threatened to take AMC's lease interest by eminent domain. *Id.* at 9, ¶ 35; Filing No. 1-17. Then, Woodsonia invoked § 15.5 of the lease and transferred AMC's leasehold interest to the Redevelopment Authority "free from the rights of AMC." Filing No. 1-18. AMC believed this transfer was invalid and refused to vacate.

Then the Parties moved from the negotiating table to state court. Woodsonia sued to evict AMC in county court. *Woodsonia Hwy 281, LLC v. Am. Multi-Cinema, Inc.*, 17 N.W.3d 780, 787 (Neb. 2025). The county court and the district court agreed with Woodsonia's interpretation of the contract and concluded AMC's property interest was properly terminated. *Id.* at 788. The Nebraska Supreme Court vacated because the county court lacked jurisdiction to decide a dispute over title in the context of a statutory unlawful entry and detainer claim. *Id.* at 793–94.[4] It did not resolve the merits of the title dispute.

A month later, AMC filed this lawsuit. Its substantive claims are: (1) breach of contract against Woodsonia, (2) wrongful eviction against Woodsonia, and (3) a takings claim against all defendants. Basically, it argues that Woodsonia's termination was "a

---

[4] It appears, after two years in state court, AMC is no longer in possession of the property. And AMC's complaint only seeks backward-looking damages. Filing No. 1 at 16, 18, 21. So, it appears the eviction arm of this litigation is done.

5

nullity" breaching the lease contract and subjecting it to eviction proceedings when it had a right to occupy the property. Filing No. 1 at 16, ¶ 70. And its takings claim alleges "Woodsonia and Scaglione conspired with the City and the CRA to wrongfully terminate the Lease and evict AMC—and in doing so deprived AMC of its leasehold interest without paying any just compensation." Id. at 19, ¶ 82.

The Court has federal question jurisdiction over this dispute under 28 U.S.C. § 1331 because AMC sued under 42 U.S.C. § 1983 and asserted a taking clause under U.S. Const. amend. V. The Court has supplemental jurisdiction over its state law claims under 28 U.S.C. § 1367 because they because they arise "from a common nucleus of operative fact"—the termination of AMC's lease interest. *Benchmark Ins. Co. v. SUNZ Ins. Co.*, 36 F.4th 766, 771 (8th Cir. 2022).

**LEGAL STANDARD**

Woodsonia's Motion to Compel Arbitration is governed by the Federal Arbitration Act (FAA). See 9 U.S.C. § 1-16. The FAA "establishes a liberal federal policy favoring arbitration agreements." *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 505 (2018) (internal quotations omitted). "Arbitration is a matter of contract, and the FAA requires courts to honor parties' expectations." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 351 (2011). An agreement to arbitrate "will be enforced as long as a valid agreement exists 'and the dispute falls within the scope of that agreement.'" *Duncan v. Int'l Markets Live, Inc.*, 20 F.4th 400, 402 (8th Cir. 2021) (quoting *Shockley v. PrimeLending*, 929 F.3d 1012, 1017 (8th Cir. 2019)); 9 U.S.C. § 4. "A motion to compel arbitration 'should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an

6

interpretation that covers the asserted dispute.'" *H&T Fair Hills, Ltd. v. All. Pipeline L.P.*, 76 F.4th 1093, 1099 (8th Cir. 2023).

Arbitration clauses are creatures of contract, and the Court must enforce the terms the parties have agreed to. *AT&T Mobility LLC*, 563 U.S. at 351. Relevant here, "parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010). If the parties delegate the question of arbitrability to the arbitrator, the Court's inquiry is limited to "challenge[s]" to "the delegation provision specifically." *Id.* at 72.

If The Court "finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding." *Smith*, 601 U.S. at 478. If other parties, without an arbitration agreement, remain in the litigation the Court has discretion to freeze the whole litigation while the arbitration is pending. *Contracting Nw., Inc. v. City of Fredericksburg, Iowa*, 713 F.2d 382, 387 (8th Cir. 1983) ("Section 3 of the Arbitration Act . . . is broad enough to permit the stay of litigation between nonarbitrating parties as long as that lawsuit is based on issues referable to arbitration under an arbitration agreement governed by the Arbitration Act."). In exercising that discretion, the Court considers: "(1) the risk of inconsistent rulings; (2) the extent to which the parties will be bound by the arbiters' decision; and (3) the prejudice that may result from delays." *Reid v. Doe Run Res. Corp.*, 701 F.3d 840, 845 (8th Cir. 2012).

**DISCUSSION**

The Parties raise many issues but one is dispositive for now: the arbitration clause in the lease.

**A. The Lease Contains a Mandatory Arbitration Clause that Delegates the Question of Arbitrability to the Arbitrator.**

The parties all agree the lease is an enforceable contract between AMC and Woodsonia. The lease provides, if there is "any disagreement, dispute or claim concerning this lease" the contract provides "either Landlord or Tenant shall be entitled to submit such matter to binding arbitration under the rules of the American Arbitration Association . . . then in effect." Filing No. 1-1 at 20. So, it appears these two parties agreed to sort out their differences in front of the arbitrator.

AMC does not contest that the lease contains an arbitration clause. Instead, it argues certain issues—specifically its wrongful eviction and takings claims—are not arbitrable. Filing No. 34 at 6–12. The Court cannot resolve this issue because the lease leaves those questions to the arbitrator—not the Court. As a reminder, parties may add a provision to their contract assigning the threshold question of arbitrability to the arbitrator. *Rent-A-Center, West, Inc.*, 561 U.S. at 68–69. For example, in *Green*, the parties delegated the issue of arbitrability to the arbitrator by "specifically incorporating the Rules of the" AAA. *Green v. SuperShuttle Int'l, Inc.*, 653 F.3d 766, 769 (8th Cir. 2011).[5] Here, like there, the lease provides that arbitration be "conducted under the rules of the"

---

[5] Specifically, the Supreme Court in *Smith* rejected the *Green* panel's conclusion that the FAA permits a court to dismiss rather than stay an action after compelling arbitration. *Smith*, 601 U.S. at 478–79. Instead, it adopted the position taken by Judge Shephard in concurrence, that a court must stay and cannot dismiss in these circumstances. *Green*, 653 F.3d at 771 (Shephard, J., concurring). The Supreme Court did not address the *Green*'s interpretation of the arbitration clause, so that part of the case remains good law. Indeed, the Circuit articulated the same rule about incorporation of the AAA rules in *Balvin v. Rain & Hail, LLC*, 943 F.3d 1134, 1137 (8th Cir. 2019) and *Burnett v. Nat'l Ass'n of Realtors*, 75 F.4th 975, 982 (8th Cir. 2023).

8

AAA "then in effect." *Compare id.* at 768 with Filing No. 1-1 at 24. The 2003 AAA rules, like the rules in *Green*, empower the arbitrator to assess its own jurisdiction. *Compare* Am. Arbitration Ass'n, *Commercial Dispute Resolution Procedures (Including Mediation and Arbitration Rules)* R.8(a) (2003), https://uat.adr.org/sites/default/files/Commercial%20Arbitration%20Rules%20and%20Mediation%20Procedures%20Jul.%2001%2C%202003.pdf ("The arbitrator shall have the power to rule on his or her own jurisdiction.") *with Green*, 653 F.3d at 769 ("Those Rules provide that an arbitrator has the power to determine his or her own jurisdiction over a controversy between the parties."). So, here, like there, the contract delegates gateway question of arbitrability to the AAA. And, because AMC does not "challenge[] . . . the delegation provision specifically" the Court must "treat it as valid" and "enforce it." *Rent-A-Center, West, Inc.*, 561 U.S. at 72.

AMC is welcome to raise its arbitrability arguments to the arbitrator. If AMC is correct, and the arbitrator lacks jurisdiction over certain claims, the Court can take up those claims when the stay is lifted. But the lease leaves that threshold question to the arbitrator not the Court.

AMC and Woodsonia agreed to arbitrate their disputes in the lease. Per their contract, the scope of that arbitration is up to the AAA. So, the Court must "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3; *Smith*, 601 U.S. at 478–79.

### B. The Claims Against the Other Defendants Should Also be Stayed Pending Arbitration.

Sending AMC and Woodsonia to arbitration leaves one question: What to do with AMC's claims against Scaglione and the Grand Island Defendants? The Court concludes

—because overlapping and potentially dispositive issues are going before the AAA—a discretionary stay is best path forward.

*The risk of inconsistent rulings*: The risk of inconsistent rulings between the Court and the AAA is high. Specifically, the terms of AMC's lease will play a central role in both proceedings. To recover on its breach of contract and wrongful eviction claims in front of the arbitrator, AMC must argue that the eminent domain provisions, § 15.1 and § 15.5, did not apply. These same provisions are central to the takings case against the other Defendants. Specifically, if a leaseholder's interest is extinguished by operation of a valid automatic termination provision in the lease, the leaseholder has no takings claim. *United States v. Petty Motor Co.*, 327 U.S. 372, 376 (1946); *Fibreglas Fabricators, Inc. v. Kylberg*, 799 P.2d 371, 375–76 (Colo. 1990) (collecting authority). So, if Woodsonia properly invoked § 15.1 and § 15.5, AMC faces a steep path to a viable takings claim. Thus, without a stay, both the Court and the AAA will need to analyze the same contract provisions against the backdrop of the same fact disputes. If the two fora reach different conclusions on overlapping questions of fact or law, it would create a massive headache for everyone. So, risk of inconsistent rulings strongly favors a stay.

*The extent to which the parties will be bound by the arbiters' decision:* "The Eighth Circuit has not given clear guidance on how the fact that certain parties are or are not bound to the results of the arbitration weighs in the exercise of the Court's discretion." *LS Black Constructors, Inc./Loeffel Constr. v. Pilgrim Interiors, Inc.*, No. 21-CV-654 (NEB/DTS), 2021 WL 3080961, at *3 (D. Minn. July 21, 2021). Here, the parties have not briefed the issue of preclusion, and any preclusive effect depends on events that have not yet occurred in arbitration. So, this factor is neutral.

*The prejudice that may result from delays:* The parties are not prejudiced by a stay. The remaining defendants will not need to engage in discovery or other costly litigation during the stay. AMC seeks only damages, so there is no risk of an injunction upsetting progress on the ongoing redevelopment project. AMC will have a full and fair chance to litigate key issues in arbitration—including the arbitrability of its claims. The arbitral award will simplify the issues for everyone. Put another way, this litigation will continue to progress while stayed, without putting a significant burden on the other parties in the meantime. So, the possibility of prejudice from delay favors a stay.

At bottom, the issues of fact and law in arbitration are inseparable from the merits of the remaining claims. Embarking on parallel litigation, risks subjecting the parties to conflicting obligations. The best course is to let the arbitration proceed, stay the remaining claims, and resolve them with the benefit of the arbitrator's decision.[6]

## CONCLUSION

AMC and Woodsonia agreed to arbitrate their dispute, accordingly the Court sends them off to the AAA. When they return, the Parties can address the remaining issues with the benefits of the arbitrator's decision.

THEREFORE, IT IS ORDERED:

1. Woodsonia's Motion to Compel Arbitration (Filing No. 22) is granted. Woodsonia's Motion to Dismiss (Filing No. 22) is denied as moot.

---

[6] Because the arbitrator's decision will likely impact the arguments made by the remaining Defendants in their motions to dismiss, the Court denies them without prejudice. They are welcome to reraise the same or different arguments after the stay is lifted.

2. Grand Island's Motion to Dismiss (Filing No. 25) and Scaglione's Motion to Dismiss (Filing No. 19) are denied, without prejudice to reassertion after the stay is lifted.

3. This matter is stayed pending arbitration between AMC and Woodsonia. The Parties are directed to file a joint status report every 90 days, updating the Court on the status of the arbitration. The Parties shall notify the Court within 30 days of the arbitrator's decision or settlement. In that submission, Defendants shall inform the Court whether they intend to refile their motions to dismiss. At that time, the Court will lift the stay, set a briefing schedule, or answer deadline, or take other appropriate action.

Dated this 14th day of August, 2025.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge